We'll call the next case on our calendar, which will be David Mathias v. Supt Frackville, Ms. Andrus. Thank you, Your Honor. May it please the Court, my name is Jennifer Andrus. I am representing the Commonwealth as Appalachian cross-Appalese. This is my first time appearing before this Court. It is a great honor to be here. If I may, I would like to reserve four minutes for rebuttal. That request will be granted. Thank you, Your Honor. There are two issues in this case, obviously, as it is both an appeal and a cross-appeal. The issue on appeal is that we are asking this Court to reverse the District Court's erroneous grant of habeas relief. We believe that the District Court did not correctly evaluate this claim under the appropriate standard of deference required by EdPASS and erroneously found that the State Court's resolution of this claim was contrary to or an unreasonable application of federal law. This Court instructed the parties to review Middleton, which I believe strongly supports our position and underscores the correct standard of review, that mere ambiguity or internal inconsistency in the jury instructions... Keeping your voice up will help, but also speaking slightly slower may also be beneficial. But I just wanted to tell you, as you said, it was your first time. Yes. Middleton, we believe, underscores the correct standard of review, namely that a mere ambiguity or internal inconsistency in the jury instructions is not sufficient. There must actually be a reasonable likelihood whether the instruction, evaluated as a whole, could have misled the juror and not just a mere possibility that one or some of the jurors were misled, but that the entire jury was and that the resulting conviction therefore violates due process. Do you even concede that there was error in the instructions on first-degree murder? That is, that they can fairly be read to suggest that it's sufficient to have intent only of the accomplice rather than the defendant? Or is your argument with reference particularly to Waddington that there's actually not error when you read those instructions in combination with the accomplice instructions? I think that there is certainly at minimum an ambiguity, and it would be disingenuous for me to claim otherwise. The trial court did give an erroneous jury instruction, and indeed defense counsel mentioned that, and the trial court erroneously stated, no, I believe I gave a correct instruction. It comes right out of the book. That is not correct. The trial court also gave a correct instruction. So what we have here is a conflict in which both a correct instruction on accomplice liability was given and an incorrect one on accomplice liability was given. It is our position that the substantive instructions as to first-degree murder and criminal conspiracy were not compromised, and so any ambiguity that might exist would be only relevant to accomplice liability. So because of that, one can look at the entire jury instruction and say that there was no reasonable possibility that the jurors would have been misled. We can infer this from the question is whether, looking at the verdict, there is any reasonable possibility that the jurors were misled. And here I would submit to the court there is not because we can look at the facts of the case which make it very clear that this defendant, Mathias, was a primary driver of events. This is not like Smith v. Horn where it wasn't clear who shot whom or who did what. Here we know that Mathias was the one who brought himself and his co-conspirator, Richard Jarman, into the victim's apartment. He was the one who knew the victim, and he was the one who said to his co-defendant, Are you ready? Whereupon they both pulled out guns, and Mathias begins shooting the victim who survived, Eric Richardson, and Jarman begins shooting his friend who died. So we know from start to finish they were working very closely together, they had this coordinated, and they had it planned out. On these facts, and given the rest of the jury's verdict, there is no reasonable possibility that Mathias might have erroneously been convicted based on his accomplice's intent alone. You seem to be addressing the substance, the due process claim as to these instructions. Are you conceding then that that claim was properly viewed by the district court as being exhausted because it was addressed in connection with the review of the ineffective assistance claim? Is that enough to exhaust a claim? No, Your Honor, and I'm glad that you gave me the opportunity to clarify that because I will say that the substantive due process violation is only the first step in the analysis. Then we have to say, was that error enough that appellate counsel should have flagged this issue and should have done more to develop it? And if so, was Mathias prejudiced by that failure? And so it's a layered claim. It is an ineffectiveness claim. That is the only one that survived. Any substantive due process claim in and of itself would not have been exhausted as it was not presented to the state courts in that form. The district court addressed both ineffective assistance and the substantive claim. Yes. The due process claim. And you seem to be responding on both. I just wanted to clarify whether you were suggesting that we ought to address both of those alternative rulings of the district court or as to the alternative ruling, that is the substantive ruling on the due process claim, whether you're arguing that that should never have been reached because it wasn't exhausted. Okay. Let me see if I can untangle my answer a little bit. I want to try to lay it out in an organized form. I think that the district court in this case was very quick to leap to find as many possible errors as there were, as evidenced by the dicta, that there were all these other errors that were waived and not ever presented to the district court, but I'm going to go ahead and throw them in in a paragraph at the end anyway. So I think that because of that, the district court maybe was quick to find both a substantive claim as a freestanding due process violation and the ineffectiveness claim, which is our position, is the only claim that was completely exhausted and was therefore properly before the court. And what do we do in evaluating, in the first instance, let's talk about it as to due process claim, but this figures into prejudice and evidence. What do we do with Francis? And what do we do with what still stands as good Supreme Court case law, that where there are contradictory instructions, that there needs to be a full explanation of curative instruction? I would suggest to Your Honor that Francis requires us not only to look at the jury instruction taken as a whole, but also in light of the surrounding body of case law and the subsequent decisions to see whether there was any reasonable likelihood that the jury was confused. Can we see which of the irreconcilable instructions they applied in this case? And in this case, Mathias' case, we can, because of their subsequent verdict as to the criminal conspiracy to commit first-degree murder. Doesn't Francis stand for the proposition where if instructions are truly contradictory, that there must be an explanatory curative instruction, that you don't just go to look at the instructions as a whole to see whether they could reasonably be viewed as leading to jury confusion? I don't believe that there is an irreconcilable conflict in these instructions. I think that they are ambiguous in that the trial court said you can convict Mathias if you find that either he or his accomplice had the intent. But that's not mutually contradictory. That's simply saying you have A or B, and subsequently the correct instruction was you can only have A, which is Mathias' intent alone. So what we know is that the jury in both of those instances picked A, Mathias' intent. What about the cross-appeal in this case? Do we have jurisdiction to hear the cross-appeal? Your Honor, in addressing that question, I am mindful that a rule reached by this Court would extend beyond the specific case presented to Your Honors. So because of that in my answer, I tried to limit it very specifically to the facts of this case because I can easily imagine a hypothetical where it would be reasonable and would best serve the interests of justice for this Court to go ahead and hear the cross-appeal. However, to reach that point, you would have to change essentially every one of the facts and procedural postures of this case. Can we just start with the rule? How about 4A3?  Well, we had requested briefing on jurisdiction over the cross-appeal, in particular as to Rule 4A3, where there has not been a timely filing under the rule of a notice of the cross-appeal. Is that mandatory and jurisdictional in the same way that an original notice of appeal would be? Or because it's rule-based, should we take that to be something that we can, as a matter of discretion, we could excuse? That is the one thing in which I think that this case does present a fair question. If I can change the hypothetical a little bit, let us say that there was some actual substantive merit to Mathias's cross-appellate claim, and let us say that it was presented to the State courts and it was mentioned in his habeas appeal, and then we appealed, and Mathias, being pro se at the time, did not understand that he had to file a notice of cross-appeal. Then counsel comes in and files an untimely notice of cross-appeal. At that point, I would feel uncomfortable making an argument saying that it should be jurisdictionally barred because my feeling is that justice would be better served by hearing that cross-appeal. Well, it's either jurisdictional or it's not. We can talk about what the standard should be for excusing an untimely filing, but I take it from your answer that you are conceding that it is not jurisdictional in the same way that an original notice of appeal is. Because it's rule-based, we can go on to apply some standard, which you can address, about under what circumstances do we excuse an untimely filing. Yes, Joan, I believe that would be the better rule. Do I also glean from what you gave as a hypothetical that you think this cross-appeal is meritless? Yes, and waived and procedurally defaulted, yes. Do we address that at the stage of considering whether we should excuse an untimely filing, or do we address that in evaluating whether a COA should be granted if it is required here? I think given the particular posture of this case, it would be better to consider that in the context of whether a COA should even be granted, because none was granted in this case. And Matthias' proceeding as though merely filing an untimely notice and request should be sufficient to warrant review of his issues. So in terms of how we exercise our discretion around a waiver of an untimely filing, is excusing an untimely filing under Rule 4A3, you wouldn't suggest that we there evaluate the merits of a claim. No more so than under any other circumstance. I'm not quite sure that I'm answering the question correctly. Well, let's go on to talk about then the certificate of appealability, because you've argued that it's still required. The Supreme Court said in Jennings that once a State has properly noticed an appeal of the grant of a habeas grit, there's no remaining gates to be guarded. So where is the gatekeeping function left? Why should a COA be required? I believe that it still serves a very important function, as I briefed in my third-step brief, because there needs to be some limit on the number and scope and type of issues that can be brought up. The fact that the appeal has been taken does not mean, then, that the appellee should be able to list 25, 30, 40 claims on cross-appeal. There still should be some filtering function prior to that point, I believe. Okay. All right, Ms. Andrus, we will have you back on rebuttal. Thank you, Your Honor.  Good afternoon. Good afternoon, Your Honors. May it please the Court. My name is Maria Polzetti, and I am here representing David Mathias. At Mr. Mathias's trial for first-degree murder, there was an erroneous accomplice liability charge given, as the Commonwealth has conceded. It was given 14 times, and the error was the jury was told that the jury could base intent on either the mental state of Mr. Mathias or his accomplice. This either-or construction was repeated eight times in the first-degree murder charge and five times in the charges on the lesser-included offenses. These errors so pervaded the charge as to result in a due process violation. There is no other Pennsylvania Third Circuit or Supreme Court case with this number of jury instructional errors. Is there even properly a due process claim, a freestanding due process claim, raised on federal habeas? Where is that raised? How is that exhausted? I understand your question, Judge Krause. In the post-conviction proceedings, Mr. Mathias raised a claim of ineffective assistance of appellate counsel for failing to challenge the first-degree murder instructions. Under Pennsylvania law, an ineffective assistance of counsel claim requires – it's actually a three-prong test in Pennsylvania – and the first prong is the underlying merits of the issue. So the underlying merits of the issue were briefed and considered by the Pennsylvania Superior Court. But wouldn't it blow wide open habeas law for us to say that for every substantive claim that counsel is allegedly ineffective for failing to raise, that by briefing ineffective assistance, claiming it, and responding, that thereby presents an opportunity for the state court to address the merits of that underlying claim, that it exhausts the underlying claim? That seems like a very different exhaustion doctrine than we've understood so far from the Supreme Court. I understand that concern. In this case, that appendix, I think it's 665 to 666, which is the Pennsylvania Superior Court opinion on post-conviction appeal. The claim is addressed in those due process terms, so it's clear that the court had an opportunity to address it. And the district court then addressed it and actually afforded a deference to that, to the state court's discussion of the due process claim. However, as you noted earlier, the court granted relief on the first-degree murder conviction on two separate grounds, on the freestanding due process ground and on the ineffective assistance of repellent counsel ground. And this court need not affirm both. This court can affirm one with the same result, which is affirming the relief on that conviction. Let me ask you this. Just speaking for myself, I think that if the state was relying solely on the plain language instruction to say that clarified the erroneous instruction, they would be on very shaky grounds. But they do have the additional argument that the conspiracy instruction did include a specific intent requirement, and the jury was convicted on that, so therefore, by necessity, they had to have found that Mattias intended the death. Why doesn't that render any error harmless? I wanted to ask about harmless error, because I think that's actually a very important issue here. Yes, the conspiracy conviction doesn't render the multiple errors harmless for several reasons. The first reason is because the conspiracy instruction itself was corrupted, because the trial court began it by saying, I've already given you the definition of first-degree murder. I'm not going to redefine it for you. So the trial court incorporated the erroneous first-degree murder instruction into the conspiracy instruction. So for that reason, the conspiracy instruction was corrupted. Also, the language in the conspiracy instruction that the commonwealth points to and that the superior court pointed to was the instruction on shared intent. Now, shared intent, in the context of the errors that occurred here, where the jury had heard 14 times that intent is an either-or proposition, shared intent does not cure this error, because it doesn't make it crystal clear to the jury that the jury has to find that Mr. Mattias had the specific intent to kill. There's no time during these jury instructions, and the commonwealth has pointed to no instance during these jury instructions, when the trial court told the jury that Mr. Mattias had to have the specific intent to kill. In Braunstein, which was a Third Circuit case that also addressed the conspiracy conviction and an erroneous first-degree murder instruction, the conspiracy instruction was quite different than the instruction that was given here in Mr. Mattias' case, and this court said it relied on the clarity of the conspiracy instruction to find that it rendered the error harmless. The court said that the supplemental instructions were very clear in Braunstein in telling the jury that it could not find Braunstein guilty unless it found that he had intent. Here, I submit that the conspiracy instructions were not clear because the language in the conspiracy instruction fed right into the error that had been repeated so many times that was confusing the jury about who had to have intent. The commonwealth has also discussed the facts of the case at length in the briefs and today in the context of harmlessness, saying there's no possible understanding of the testimony other than that Mr. Mattias went in with the specific intent to kill. The testimony, however, was not at all conclusive on the shared intent, I'm sorry, on specific intent. Or as to the purpose of the agreement between Mr. Mattias and Mr. German. In fact, the commonwealth theory of the case at trial was that it was a botched robbery, right? So a reasonable jury could have understood that this was a robbery gone wrong and that maybe Mr. Mattias didn't have the specific intent to kill anyone, remembering that Mr. Mattias didn't actually kill anyone in this offense. The jury could have understood that Mr. German did have specific intent and formed it at some point during the robbery gone wrong. Sorry, convicted on that basis erroneously. Look at the ineffective assistance claim, the one that is more clearly exhausted in any event. You say that we should not and the district court didn't need to apply a deference. Even if that's true as to the first claim that was raised as to ineffective assistance for failing to raise any claims, on the second one dealing with the specific instruction, didn't the state court adopt the Adams formulation that we've said is akin to strickland and then proceed to make findings as to actual prejudice? Why isn't that the proper application of strickland, not contrary to or an unreasonable application of? You're talking about the ineffective assistance of appellate counsel claim as to the first degree murder instruction, correct? We're not taking the position that 2254G doesn't apply at all to that adjudication. We're taking the position that it's unclear whether the Pennsylvania Superior Court addressed both prongs of ineffective assistance of counsel, but I think the prejudice prong of ineffective assistance of counsel is quite important here. The prejudice prong would be whether there's a reasonable probability of a different result on appeal had counsel properly raised the issue. You agree that a deference is due in evaluating the ineffective assistance claim? That that particular ineffective assistance claim in the district court was incorrect in not applying a deference? Yes. And the Commonwealth has argued in the third sub-brief that we can't show appellate ineffectiveness because there wouldn't be a reasonable probability of a different result on appeal in Pennsylvania because there were some Pennsylvania cases on accomplifiability errors that went the other way. But those cases are actually significantly distinguishable in Daniels and in Spate, which are cases relied upon the Commonwealth. There was only one instructional error as opposed to the repeated errors here that really affected the charge as a whole. And so when we apply Strickland analysis, we look at the decision-maker as an objective decision-maker. So we assume that had an objective appellate court had a properly briefed due process issue before it with this number of instructional errors, there would have been a reasonable probability of a different result on appeal because this case was so different than any Pennsylvania case that had come before it, or after it for that matter. Let's go back, if we can, to this question of the conspiracy instructions because I think the conspiracy instructions ultimately can be very dispositive in this case. You know, why weren't they constitutionally effective? You said that they were, I believe you used the word that they were in error. But why weren't they constitutionally effective? Well, I think the inquiry here is whether the conspiracy instruction viewed along with the charge as a whole raises a reasonable likelihood that the jury misunderstood the specific intent requirement, right? The conspiracy instruction, and I'll read to you, this is at appendix 630, was, he and his alleged co-conspirator, Richard Jarman, had an agreement or common understanding and shared the intent to commit the crime of first-degree murder. And that would include the defendant having the, there's a dash, having shared the specific intent to kill. What's wrong with that? It's not an incorrect statement of Pennsylvania law. I mean, we don't argue that it's an incorrect statement of Pennsylvania law. We argue that in the context of this charge as a whole, where the jury has an incorrect understanding of intent, to speak only in terms of shared intent instead of speaking of the defendant's own intent alone doesn't cure the error here. And Braunstein, this court, as I said earlier, found an error was cured by a very clear conspiracy instruction that spoke only as to the defendant in that case. The instruction's in your opinion. In this case, the conspiracy instruction, again, speaks in terms of shared intent. And we can understand, although we as lawyers, as judges, understand shared intent as a legal concept, jurors who have repeatedly heard that you could be speaking about either the intent of Mr. Mathias or the intent of the actual shooter. Well, I mean, we look at the instructions. Don't we also have to look at the evidence as a whole? Yes, this court's precedent does look at the evidence. And as I said, the evidence was not conclusive. It was conclusive that Mr. Mathias and Mr. Jarman had some unlawful intentions. They both had weapons. They both shot, correct? Yes. What else do you need? Well, I think this isn't necessarily a... They weren't engaging in target practice. I think the facts here are not necessarily conclusive, but there's no reasonable likelihood the jury could have assumed that Mr. Mathias went in with some other intent and Mr. Jarman had the intent to kill. He's the one who shot and killed the man lying on the ground. Mr. Mathias took out his weapon when the testimony said that Mr. Richardson lunged for the weapon, and as they were sort of wrestling for the weapon, Mr. Mathias began shooting. And he shot Mr. Richardson only in the legs. It's a horrible offense, but it doesn't necessarily have a specific intent to kill. And the Commonwealth did not charge attempted murder as to Mr. Richardson. So all of the intent to kill has to be as to the murder victim, Mr. Jewell. These arguments may go to whether reasonable jurists could debate the merits here, but to assuming that we get past 403, that we excuse the untimeliness, and assuming that we think a COA is required, you would still need to show that there was a debate or could be a debate among reasonable jurists as to the procedural bars here. Don't we have at a minimum waiver in terms of a procedural bar to reach either of the conspiracy-based cross-claims that you're trying to raise? Right. Under this court's precedent of liberal construction of pro se pleadings, and also under a fair reading of the pro se pleadings, no, the claim is not waived. The pro se habeas petition raised two claims. One was appellate ineffectiveness for failure to file an effective appeal brief, and the second was specifically the first-degree murder instruction issue. So it falls within the first issue, which is the appellate ineffectiveness issue, because appellate counsel actually challenged the conspiracy instruction on appeal but failed to file an appellate brief that could even be meaningfully construed by the Pennsylvania courts. So Mr. Mathias's challenge, and it's at Supplemental Appendix 215, the pro se pleadings said that appellate counsel raised a number of claims but failed to properly develop them. This is one of the only two claims that appellate counsel raised and failed to properly develop. So this is what Mr. Mathias was challenging. But the district court already reached out to do its own kind of combination of the first and second claim in the way you're suggesting. But at least the second claim dealt with the due process claim as to first-degree murder. And the court combined that with the general claim that nothing was raised to say, okay, I'll construe this as ineffective assistance for failure to raise the first-degree murder. There's no claim raised on habeas specifically as to due process involving the conspiracy instruction. Doesn't that require even enough further reaching to say anything that counsel could have raised or should have raised in the first claim? If he generally failed to raise claims on appeal, the district court should have construed as an ineffective assistance to raise any one of those number of claims. Again, how, given our rules on procedural bar, could we adopt something so wide open as to claims being preserved? I think it's not quite as wide open as it seems because the direct appeal brief, which is in, I think, the supplemental appendix, appellate counsel was challenging conspiracy instruction, was challenging it on due process grounds. So we're not, we don't have to imagine what effective, well, we do have to imagine what effective appellate counsel might have said, but we don't have to imagine what appellate counsel was trying to do because it is actually raised. It's simply not raised effectively. And so Mr. Nevaez in his pro se pleadings, which do have to be generously construed, challenged appellate counsel's stewardship of the direct appeal and said he ineffectively raised the claims that he did raise. And this is the claim he was attempting to raise. So I don't think it's such a stretch that we have to imagine what the issue was. The issue is right there. Let me ask you a technical question. If we get through all of these different steps and let's say COA required and you've met, we conclude you've met those threshold showings, does that mean given the briefing we have here that we can proceed to address the issues on the merits? Or does that mean that there needs to be further briefing as to the merits if a COA is granted? Is there anything else beyond what is in these briefs that you would need to brief? This court can, we feel we've addressed the merits in the briefing and this court can grant a COA and address the merits at the same time. I don't think that's an unheard of process. If I can briefly address Middleton, if we can address Middleton, which I haven't had a chance to address. Briefly. Yes. So that's a case about 2254D analysis of a state court decision. In that case, there was one erroneous instruction and three correct ones and the state court said that there was no due process violation and the Supreme Court simply held that that wasn't an unreasonable application of Estelle v. McGuire. The error here is such a completely different situation and the state court decision is different here as well. So I don't think it's particularly dispositive. McNeil doesn't address Franklin at all and, of course, Franklin is very much at issue in this case. Okay. Well, thank you, Ms. Belzetti. We'll have Ms. Andrews back on rebuttal. There are three points that I'd like to make quickly in passing. One of them is that I do believe that the only surviving claim is an ineffectiveness claim, which, as I stressed in my brief, is important because it means that review has to be doubly deferential both under EDPA and under Strickland and the state court's decision that under state law this would not have been a valid cause for relief really should, in my opinion, end the question there because it is only an ineffectiveness claim and not a substantive freestanding due process violation. Secondly... If we think that Franklin controls and Franklin's not even addressed by the state court, is that something that factors into the way we think about its formulation of the Adams or Strickland test for purposes of EDPA deference? Or do we say it formulated the Strickland test properly, we apply EDPA deference, and then we consider Francis, Estelle, Middleton in evaluating with double deference the prejudice question? That is a difficult question and I would have difficulty answering it in the abstract. I think it depends on the particular instructions at issue, particularly whether they are completely irreconcilable and mutually contradictory or where, as here, there is a possibility of reading them to be congruent with one another. The second point that I wanted to make was that in addressing the evidence in this case and the conspiracy instruction, counsel has repeatedly suggested that Mathias may not have shared the specific intent to kill, but the evidence does not support that at all. As I mentioned during my first argument, he was the one who led them into the area, but also he did attempt to shoot Eric Richardson in a vital part of the body and he failed only because Richardson was able to wrestle his hand away, whereupon Mathias still shot him several times in the legs and buttocks. Mr. Richardson had to flee desperately out of the apartment, not knowing if his friend was alive or dead, to get help. So the evidence does clearly show that they intended, Jarman and Mathias, to kill Mr. Richardson and his friend whom they found inside the apartment. But the murder and the instructions were not as to intend to kill Richardson. The instructions were specifically as to intend to kill his friend in the apartment. Yes, Your Honor, because... So how does what you've described, and that would seem to feed into the confusion that the jury might have had, when you put this second victim into the picture? We're talking about the victim as the friend. How is it that talking about shared intent could be curative? Well, Richard Jarman would not have been able to kill Joseph Druell, but for Mathias getting him into the apartment and introducing him to Richardson, who knew Mathias, but did not know Jarman except vaguely by sight and by his street name. It was because he knew Mathias that he let them in and brought them up. And it was Mathias who said, are you ready? And pulled his gun out first, after which Jarman pulled his gun out and began shooting Mr. Druell. Then they fled together. So if you take the totality of the circumstances, I think it is very clear that the murder of the victim who actually died would not have happened, but for Mathias coordinating planning and basically taking the lead role in the whole thing. But coordinating and planning is different than having the specific intent to kill Druell, isn't it? It depends whether you think they were coordinating and planning the murder, which is my argument, that he brought them in there and said, are you ready? Pulled his gun out first. And all of that clearly indicates that it wasn't just a robbery. He started shooting first, Mathias did. He wanted to kill the victim and his friend. And you had a third point. Yes, Your Honor. And that would be as to the conspiracy instruction, which is absolutely waived, both because it was not raised in the original habeas petition and because if you go back and look at the supplemental appendix, the complaint that appellate counsel attempted to raise with regard to the criminal conspiracy was not the one that counsel is advancing here. It was that they shouldn't have imputed that the purpose of the conspiracy was to shoot and kill Mr. Druell, but rather that they might have been there for something entirely different. Okay. All right, Ms. Andrews, thank you very much. Thank you, Your Honor. And we thank both counsels for their arguments in this case. And we'll take the matter under review.